IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JOSEPH HUNTER, III, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00865- |
| v. | § | ALM-AGD |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying his claim for disability

and disability insurance benefits. After reviewing the Briefs submitted by the Parties, as well as

the evidence contained in the administrative record, the court recommends that the

Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On August 12, 2019, Plaintiff Joseph Hunter, III filed an application for disability and

disability insurance benefits under Title II of the Social Security Act ("Title II") (TR 10). Plaintiff

asserts an alleged onset of disability date of June 1, 2018 (TR 84; 173; 213). On December 17,

2019, Plaintiff's claims were initially denied (TR 94; 108), and upon reconsideration on May 4,

2022, Plaintiff's claims were again denied (TR 107; 116). On July 1, 2020, Plaintiff requested an

administrative hearing ("Hearing") (TR 120), which was held before an Administrative Law Judge

("ALJ") on February 16, 2021 (TR 24). At the Hearing, the ALJ heard testimony from Plaintiff,

Plaintiff's wife, Rhonda Hunter ("Ms. Hunter"), Plaintiff's attorney representative, and a

vocational expert ("VE") (TR 24–54). Additionally, during the Hearing, Plaintiff amended his

alleged onset date to September 1, 2019 (TR 33–34). On March 4, 2021, the ALJ issued a decision

denying Plaintiff's claims (TR 7–9). On May 4, 2021, Plaintiff requested a review of the ALJ's decision by the Appeals Council (TR 172). On July 13, 2021, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner (TR 1–3). On October 27, 2021, Plaintiff filed the instant lawsuit by filing a Complaint, which Plaintiff and Ms. Hunter signed (Dkt. #1). Plaintiff then moved to proceed *in forma pauperis* (Dkt. #4), which the court granted on November 18, 2021 (Dkt. #9). The same day, the court issued an order notifying Ms. Hunter "that she may not sign filings on behalf of her husband Plaintiff, Mr. Joseph Hunter," and cautioned Ms. Hunter "that the Court may strike any filing not in compliance with the signature requirement of Rule 11(a)." (Dkt. #10 at 2). On April 13, 2022, the Commissioner filed a Motion to Dismiss, urging the court to dismiss the case pursuant to Rule 12(b)(6) because Plaintiff tardily filed his Complaint on October 27, 2021 (Dkt. #17 at 1). On May 10, 2022, Plaintiff filed a letter as a response to the Commissioner's Motion to Dismiss; Ms. Hunter drafted and signed the letter (Dkt. #18). On March 20, 2023, the court ordered the Parties to file briefs (Dkt. #19). The same day, the court denied the Commissioner's Motion to Dismiss as an independent motion and notified the Parties that the court "will consider the Motion to Dismiss as briefing by the Commissioner." (Dkt. #20). On May 18, 2023, the Commissioner filed the Administrative Record ("Record") (Dkt. #24) and an Answer to Plaintiff's Complaint (Dkt. #23). The same day, the court again directed the Parties to file briefs (Dkt. #25). On June 6, 2023, Plaintiff filed another letter with the court, which was drafted and signed by Ms. Hunter, and included a letter from Plaintiff's medical provider at Lifepath Systems (Dkt. #26). On July 5, 2023, the Commissioner filed its brief (Dkt. #27). On October 18, 2023, because Plaintiff had not filed a brief, the court ordered Plaintiff to file a brief within 20 days of receipt of the Order (Dkt. #28). The Order further warned Plaintiff that "[f]ailure to comply with this Order may result in a

recommendation of dismissal of Plaintiff's claims without prejudice under Federal Rule of Civil Procedure 41(b) without further notice to Plaintiff." (Dkt. #28) (emphasis omitted). On November 8, 2023, Plaintiff filed his brief in the form of another letter, which was drafted and signed by Ms. Hunter and contained the June 6, 2023, letter as an attachment (Dkt. #31).

## II.    STATEMENT OF RELEVANT FACTS

### 1.    Age, Education, and Work Experience

Plaintiff was born on April 19, 1961, making him 57 years old at the time of alleged onset of disability (TR 84). Plaintiff's age classification at all relevant times was that of "advanced age." *See* 20 C.F.R. § 404.1563(e). Plaintiff's highest level of education is a GED (TR 37, 469), and the VE testified that his past work experience includes a kitchen helper or dishwasher, DOT number 318.687-014 and a cook helper, DOT number 317.687-010 (TR 70–71). Plaintiff has not engaged in substantial gainful activity since September 1, 2019, the alleged date of onset of disability (TR 33–34).

### 2.    Relevant Medical Records

The ALJ found Plaintiff has the following severe impairments: schizophrenia, affective disorder, and unspecified anxiety disorder (TR 12). Relevant to these conditions and the arguments raised by the parties are the medical opinions and evaluations from Plaintiff's healthcare provider, Aminur Rahman, M.D., and State Agency Medical Consultants W. Miller Logan, M.D., Laurence Ligon, M.D., and Tina Ward, M.D. (together, "SAMCs"), as well as State Agency Psychological Consultant Susan Posey, Psy.D. ("SAPC") (TR 12–13, 18). The ALJ noted on several occasions that he considered the entire record in making his decision (TR 12–18). The Commissioner frames Plaintiff's issues as follows: 1) whether substantial evidence supports the residual functional capacity (RFC) assessment; 2) whether Plaintiff satisfied his step four burden of showing that he

was unable to perform his past relevant work; and 3) whether the evidence that Plaintiff submitted to the court warrants remand (Dkt. #27 at 1).[1]

### a. Treating Physician – Dr. Aminur Rahman, M.D.

Between January 2019 and September 2020, Dr. Rahman was Plaintiff's provider at Lifepath Systems (TR 463–687). Beginning in September 2019, Plaintiff saw Dr. Rahman for "med check" follow-ups for anxiety and schizophrenia, wherein Plaintiff reported he was "doing good" (TR 495; 506; 536). Plaintiff also denied any new issues, including hallucinations and paranoid thoughts, and he reported that he slept well at night (TR 495; 506; 536). Generally, Plaintiff exhibited appropriate appearance, no abnormal movements, good insight and judgment, and normal mood, affect, speech, attention span/concentration, thought content, and thought processes (TR 496–97; 507–08; 539–40). Dr. Rahman's examinations began including a memory assessment in January 2020, and he noted that Plaintiff's memory was intact (TR 540; 551; 571). At all times throughout the relevant period, Dr. Rahman diagnosed Plaintiff's impairments as improving (TR 497–98; 508; 536–37; 548–49; 567–68; 580–81; 594–96; 617–19; 632–34; 656–57; 671–72). Additionally, in March 2020, Plaintiff reported to Dr. Rahman that Plaintiff felt down "at times," and in April 2020, Plaintiff reported "sometimes" having bad dreams and hearing knocking at the door (TR 547; 567). Plaintiff also reported having a good appetite and denied paranoid thoughts (TR 547; 567). Dr. Rahman's examination showed good insight and judgment and normal speech, memory, attention span/concentration, and "thought content and processes; cognition," including no evidence of abnormal or delusional thought content or cognitive disturbance (TR 550–51; 570–71).

---

[1] According to the Commissioner, the court does not reach the merits of Plaintiff's claim because Plaintiff's appeal was untimely (Dkt. #27 at 1). The Commissioners brief addresses the stated issues in the event that the court addresses the merits of Plaintiff's claims (Dkt. #27 at 1).

In addition, on January 4, 2021, Plaintiff appeared before Dr. Rahman for a "Medical Assessment of Ability to do Work-Related Activities (Mental)" (TR 688–90). Dr. Rahman listed the current diagnosis as schizophrenia and unspecified anxiety and depression (TR 689). Dr. Rahman listed the following indicators to support his diagnosis: anhedonia, sleep disturbance, paranoia, low energy, chronic disturbance of mood, difficulty thinking/confusion, chronic depression, and hallucinations/delusions (TR 689).

Dr. Rahman then rated Plaintiff's ability to accomplish several work-related skills as follows: Plaintiff experienced no significant loss of ability to apply commonsense understanding to carry out simple one or two-step instructions; Plaintiff experienced some loss of ability to ask simple questions or request assistance and maintain personal appearance but was capable of consistently performing those skills independently, appropriately, and effectively; Plaintiff experienced substantial loss of ability to do the following activities in a regular, competitive environment, and at best, could only do so in a sheltered work setting where special attention is provided: ability to maintain regular attendance and be punctual, to act appropriately with the general public, make simple, work-related decisions, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and behave in an emotionally stable manner; and Plaintiff experienced an extreme loss of the ability to do the following in regular, competitive employment and in a sheltered work setting: ability to maintain concentration for extended periods, maintain attention/stay on task for an extended period, perform at a consistent pace without an unreasonable number and length of rest periods/breaks, to accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in routine work settings, to cope with normal work stressors, and to finish a normal work week without interruption from psychologically based symptoms (TR 688–89).

Dr. Rahman further noted that "this patient has a residual disease process which has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate" (TR 690). When prompted to respond as to how often Plaintiff's condition would prevent Plaintiff from working, Dr. Rahman responded "unpredictable/difficulty to keep stable job" (TR 690). Dr. Rahman noted that Plaintiff's impairments were severe enough to limit Plaintiff's ability to work "regardless of alcohol and/or drug abuse, if any" (TR 690). Dr. Rahman also noted that Plaintiff's depression has been getting worse (TR 690).

### b. Initial Level: State Agency Medical Consultants – Dr. W. Miller Logan, M.D. and Dr. Laurence Ligon, M.D.

Dr. Lignon reviewed Plaintiff's medical records at the initial-level agency determination and ultimately determined that Plaintiff was not disabled (TR 87–88; 94). Dr. Miller Logan also reviewed Plaintiff's medical records for the initial-level agency determination (TR 88–89). Dr. Miller Logan determined that Plaintiff suffered from both schizophrenia spectrum and other psychotic disorders, depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders (TR 88). Dr. Miller Logan considered Plaintiff's conditions under the "Listings" criteria but found that the Plaintiff's conditions did not satisfy criteria "A" or "C" (TR 88–89). Dr. Miller Logan determined that Plaintiff is mildly limited in his ability to understand, remember, or apply information and adapt or mange oneself, and is moderately limited in his ability to interact with others and concentrate, persist, or maintain pace (TR 89). Dr. Miller Logan concluded that Plaintiff's allegations were partially supported by the medical evidence of record (TR 89). Dr. Miller Logan found Plaintiff to have understanding and memory limitations, sustained concentration and persistence limitations, social interaction limitations, and ability to adapt limitations (TR 91–92). However, related to work, Dr. Miller Logan found Plaintiff's

understanding and memory not to be significantly limited, found Plaintiff was not significantly limited in his ability to understand and remember very short and simple instructions, and Plaintiff's ability to understand and remember detailed instructions was moderately limited (TR 91). Dr. Miller Logan further found Plaintiff to be moderately limited in the following skills: ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, ability to complete a normal workday without interruption from symptoms, ability to interact appropriately with the general public, ability to ask simple questions or request assistance, ability to accept instructions and respond appropriately to criticism from supervisors, ability to respond appropriately to changes in the work setting, and ability to travel in unfamiliar places or use public transportation (TR 91–92).

### c. Reconsideration Level: State Agency Psychological Consultant – Dr. Susan Posey, Psy.D and State Agency Medical Consultant – Dr. Tina Ward, M.D.

At the reconsideration level, Dr. Ward reviewed Plaintiff's medical records and ultimately determined that Plaintiff was not disabled (TR 96–101; 107). Dr. Posey also reviewed Plaintiff's records and found a primary severe impairment for schizophrenia spectrum and other psychotic disorders, a secondary non-severe impairment for depressive, bipolar, and related disorders, and a non-severe impairment for anxiety and obsessive-compulsive disorders (TR 101). Dr. Posey considered Plaintiff's conditions under the "Listings" criteria but found that the Plaintiff's conditions did not satisfy criteria "A" or "C" (TR 101–02). Dr. Posey found Plaintiff to have understanding and memory limitations, sustained concentration and persistence limitations, social interaction limitations, and ability to adapt limitations (TR 104–05). Dr. Posey determined that Plaintiff is moderately limited in the following areas: ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, ability to complete a normal workday without interruption from symptoms,

7

ability to interact appropriately with the general public, ability to ask simple questions or request assistance, ability to accept instructions and respond appropriately to criticism from supervisors, ability to respond appropriately to changes in the work setting, and ability to travel in unfamiliar places or use public transportation (TR 91–92).

### d. Other Treating Physicians and Examinations

In correspondence to the court, Plaintiff alleges that "[i]t was stated by his Physician, Dr. Leigh Echols Nguyen and his metal health Doctor Vanessa Brimigion that he is no longer able to work because of his conditions." (Dkt. #31 at 1). Dr. Nguyen was one of Plaintiff's treating physicians at Garland Health Center (TR 452–62), but the Record does not contain any note from Dr. Nguyen concerning Plaintiff's ability to work, and the Commissioner did not expressly discuss Dr. Nguyen's records in his decision. *See* (TR 10–19). Additionally, while the May 3, 2023, letter states that Plaintiff's "current diagnoses per Vanessa Brimigion, APN, are Schizophrenia and Unspecified Anxiety Disorder," the court will not consider evidence that was not before the ALJ when he made his decision. *See* discussion, *infra.*, Part V. As such, the court does not discuss the findings of Drs. Nguyen and Brimigion.

### 3. Hearing Testimony

#### a. Plaintiff's Testimony

On February 16, 2021, the ALJ held a Hearing over the phone (TR 24–77). At the outset, Plaintiff's attorney amended Plaintiff's alleged onset of disability date to September 1, 2019 (TR 34). Then, the ALJ and Plaintiff's attorney questioned Plaintiff and his wife, Ms. Hunter (TR 24–70). Plaintiff answered questions regarding his personal life, his symptoms, and his limitations related to work and engaging in daily life activities (TR 34–59). Plaintiff testified that he has not driven in two or three years because of his nervousness and anxiety, and that the noises and people

at the grocery store cause him to become irritated and confused (TR 38; 43). Plaintiff then testified that when he was a dishwasher, he would have to leave work early three or four days a week due to the exhaustion, weakness, and confusion caused by Plaintiff's medication (TR 44). Plaintiff testified that he hears a knocking sound "daily and nightly" (TR 45). Plaintiff also testified that he wakes around 3:00 or 4:00 a.m. each morning and paces around the house until he takes his medication at 7:00 a.m. (TR 47–48). Plaintiff testified that he goes back to sleep at about 9:00 a.m. and sleeps for approximately two more hours (TR 48). Plaintiff testified that he thinks people are talking about him or are out to get him "all the time" (TR 50). Plaintiff then testified that he would not change out of his pajamas, shower, or do other personal care without Ms. Hunter's prompting (TR 54–55). Plaintiff testified that he asks Ms. Hunter to sit in the bathroom while Plaintiff showers because he fears he will slip and fall (TR 56), and that Plaintiff does not usually watch television because Plaintiff feels the television is talking directly to him (TR 56). Plaintiff testified that he feels depressed with intermittent moments of happiness approximately three times a week (TR 58).

Ms. Hunter testified that Plaintiff zoned out consistently and that Plaintiff reported hearing things daily (TR 60–63). Ms. Hunter testified that Plaintiff has trouble expressing his emotions because he becomes confused, and that these symptoms have gotten worse over time (TR 68).

### b.  VE's Testimony

The VE testified about Plaintiff's past employment, noting two occupations, both classified as medium (TR 70–71). The ALJ posed two hypotheticals to the VE and asked whether a person with such limitations in the hypothetical could perform Plaintiff's past relevant work (TR 71–74). The VE first classified Plaintiff's past work as follows:

A He's worked as a kitchen helper, basically as a dishwasher –

Q Okay.

A -- DOT number 318.687-014. It is considered medium. It is unskilled with a specific vocational preparation factor of 2.

Q Okay.

A He's also done work -- it's in the file. It says food boiler, cooking crabs, fish, vegetables, and shrimp. I think this would best fall under the DOT title of cook helper –

Q Okay.

A -- DOT number 317.687-010, it is considered medium, SVP again is at a two.

(TR 70–71). The ALJ then posed hypothetical limitations to the VE, asking which past work a person could perform with the various limitations proposed (TR 71–74). The VE testified that an individual with the limitations in the first hypothetical would be able to perform Plaintiff's past work:

> Q Understood. And if you will please bear with me just a moment. With those considerations in mind then, sir, I ask you to assume a hypothetical individual of claimant's age, education, and work history, who is limited non-exertionally in the following respects: communications, able to hear and understand simple oral instructions; understand, remember, and carry out instructions; able to perform simple, routine tasks; able to interact with supervisors and coworkers frequently and public occasionally, dealing with changes in work setting, able to make simple work-related decisions; time off task in addition to normal breaks is five percent of an eight-hour workday. Could this hypothetical individual do the past work you described, sir, either as actually or generally performed in the national economy?
>
> . . .
>
> A I would say yes with that particular hypothetical.
>
> Q Yes, sir.
>
> A Past work is unskilled, simple, repetitive type work, I don't see any problems with that.
>
> Q Okay. Is that one or both?
>
> A Both.

Q And is that as actually or generally performed?

A Either way.

Q Understood. Could this hypothetical individual do any other work, sir? If so, can you give me a few examples with numbers of jobs for each occupation?

A Housekeeping cleaner, DOT number 323.687-014, light, SVP is a 2, considered simple and routine and repetitive, we show 237,448 in the national economy.

Q Four-hundred and how many, sir?

A No, 237,448.

Q Forty-eight, okay.

A Just a moment, photocopying machine operator, DOT number 207.685-014, light, SVP is a 2, and it's considered routine and repetitive, we show 25,524 in the national economy. Commercial or institutional cleaner, DOT number 381.687-014, it's heavy, SVP is a 2, unskilled, it is considered routine and repetitive, and we show 22,432 in the national economy. And I've definite sampling.

Q Yes, sir, okay. Is your testimony consistent with the Dictionary of Occupational Titles?

A Yes, sir, it is, completely.

(TR 71–72). The VE then testified that an individual with the limitations in the second hypothetical

would not be able to perform Plaintiff's past work:

Q Next, Mr. Mungall, please assume a hypothetical individual of the claimant's age, education, and work history, who is limited as identified in the preceding, except in the following particulars. Those are understand, remember, and carry out instructions; able to perform simple, routine, and repetitive tasks; able to interact with supervisors frequently, coworkers and the public occasionally; as before dealing with changes in work setting, able to make simple work-related decisions; time off task here in addition to normal breaks, 10 percent of an eight-hour workday. Sir, could this hypothetical individual do the past work you described either as actually or generally performed in the national economy?

A No, sir.

Q Could not.

A Could not.

Q All right. And why is that, sir?

A Ten percent off task -- well, everybody is off task some period of the workday. I think 10 percent generally where employees begin to draw the line and if it would continued, it would result in disciplinary action and eventual dismissal.

Q Okay. Could this hypothetical individual do any other work? If so, can you give me a few examples and numbers of jobs for each occupations?

A Not on a full-time competitive basis.

Q And I take it the reason is similar?

A The reason is the same, yes.

Q Yes, sir, okay. Is your testimony consistent with the Dictionary of Occupational Titles, sir?

A It's not inconsistent with the Dictionary of Occupational Titles, but the DOT is silent on such issues. That's based on 35 plus years of experience as a vocational rehabilitation counselor and my education.

(TR 73–74).

## III.    FINDINGS OF THE ALJ

### 1.    *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. *Id.* at § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. *Id.* at § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at § 404.1520(d). Fourth, a

claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity. *Id.* at § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* at § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

## 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation (TR 7–23). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 1, 2019, the date of alleged onset of disability (TR 12). At step two, the ALJ found Plaintiff has severe impairments for schizophrenia, affective disorder, and unspecified anxiety disorder (TR 12). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526) (TR 12). At step four, the ALJ determined Plaintiff has the following RFC:

> After careful consideration of the entire record, I find that the claimant has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: In understanding, remembering, and carrying-out instructions, he can perform simple, routine tasks. In dealing with changes in work setting, he can make simple work-related decisions. Also, he can frequently interact with supervisors and co-workers, while he can only occasionally interact with the general public.

(TR 15). Continuing the step four analysis, the ALJ determined that Plaintiff is able to perform his past relevant work as a cook helper (TR 18). Finally, the ALJ determined that the "claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2019, the amended alleged onset date, through the date of this decision." (TR 19).

## IV.    STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (internal quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Social Security Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. § 423(d); "Substantial gainful activity" is determined by the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## V.    ANALYSIS

At the outset, the court notes that Plaintiff's Complaint is subject to dismissal because it was not timely filed and for failure to comply with the court's order. However, even assuming Plaintiff's appeal was timely, and assuming Plaintiff complied with the court's orders, the court recommends that the Commissioner's decision be affirmed.

### 1.    *Plaintiff's Complaint should be dismissed under Rule 12(b)(6) for the failure to state a claim.*

"To survive a motion to dismiss [pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A court generally may not "go outside the complaint" in considering a Rule 12(b)(6) motion but may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

In the Commissioner's Motion to Dismiss (Dkt. #17) and Brief (Dkt. #27), the Commissioner argues that Plaintiff's Complaint is untimely because Plaintiff filed his lawsuit more than 60 days after receiving notice of the Commissioner's decision.[3] The court agrees.

---

[2] To assess the sufficiency of a complaint, the court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

[3] The court declines the Commissioner's invitation to treat its Motion to Dismiss as a motion for summary judgment. *See Shawnee International, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984) ("The district court had before it the original complaint, amended complaint, motion to dismiss and briefs of the parties when it entered the order of dismissal. There is nothing to support the suggestion that the court considered any matter beyond the pleadings.").

The procedures for judicial review of the Commissioner's final decision fall under Title II or Title XVI of the Social Security Act at 42 U.S.C. § 405(g), which states in relevant part:

> Any individual, after any final decision of the Commissioner made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner may allow.

"Mailing" refers to the date the individual receives the Appeals Council's Notice denying Plaintiff's request for review of the presiding officer's decision or of the Appeals Council's decision. 20 C.F.R. § 422.210(c). The agency presumes receipt five days after the date of such notice unless there is a reasonable showing to the contrary. *Id.* at § 404.901.

Here, the Appeals Counsel denied Plaintiff's request for review of the ALJ's decision on July 13, 2021 (Dkt. #17 at 2). Because Plaintiff does not demonstrate that he did not receive the Appeals Council's notice, Plaintiff had until 60 days after July 18, 2021, to commence the lawsuit. In other words, Plaintiff's filing deadline was September 16, 2021. However, Plaintiff filed his Complaint on October 27, 2021, 41 days past the deadline (Dkt. #3).

Even so, "cases may arise where the equities in favor of tolling the limitations period are so great that deference to the agency's judgment is inappropriate." *Bowen v. City of N.Y.*, 476 U.S. 467, 480 (1986) (citation and internal quotation marks omitted). The Supreme Court has held that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005).

However, in this case, there are no circumstances to justify equitable tolling of the statute of limitations. Plaintiff's pleadings do not demonstrate that an extraordinary circumstance prevented him from filing a timely complaint. *See* (Dkts. #3; 18; 31). Notably, Plaintiff seems to

16

claim the inverse: "Our reason for late appeal is because we refused when asked by our lawyer to refile. I am not concerned about the appeal. We are filing a lawsuit because my husband was denied[.]" (Dkt. #18 at 1). Accordingly, because Plaintiff did not file his Complaint within the 60-day deadline, and because the circumstances of this case do not justify equitable tolling, Plaintiff's untimely Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### 2. Plaintiff's Complaint should be dismissed under Rule 41(b) for failure to comply with a court order.

A district court may dismiss an action for failure to prosecute or to comply with any court order. *Campbell v. Wilkinson*, 988 F.3d 798, 800 (5th Cir. 2021) (quoting FED. R. CIV. P. 41(b)). The exercise of the power to dismiss for failure to prosecute is committed to the sound discretion of the court, and appellate review is confined solely to whether the court abused its discretion. *Green v. Forney Eng'g Co.*, 589 F.2d 243, 247 (5th Cir. 1979) (citation omitted); *Lopez v. Aransas Cnty. Indep. Sch. Dist.*, 570 F.2d 541, 544 (5th Cir. 1978) (citation omitted). "Not only may a district court dismiss for want of prosecution upon motion of a defendant, but it may also *sua sponte* dismiss an action whenever necessary to 'achieve the orderly and expeditious disposition of cases.'" *Anthony v. Marion Cnty. Gen. Hosp.*, 617 F.2d 1164, 1167 (5th Cir. 1980) (citation omitted).

Here, Ms. Hunter drafted and signed Plaintiff's Complaint (Dkt. #3) and Plaintiff's Motion to Proceed *In Forma Pauperis* (Dkt. #4). As a result, the court issued an order informing "Plaintiff's wife, Mrs. Rhonda Hunter, that she may not sign filings on behalf of her husband Plaintiff, Mr. Joseph Hunter. Plaintiff is further cautioned that the Court may strike any filing not in compliance with the signature requirement of Rule 11(a)." (Dkt. #10 at 2). Even so, Ms. Hunter drafted and signed Plaintiff's response to the Commissioner's Motion to Dismiss (Dkt. #18) and Plaintiff's Brief (Dkt. #31) in violation of the federal rules and the court's order. Accordingly, the

17

present case should be dismissed without prejudice under Federal Rule of Civil Procedure 41(b) for failure to comply with a court order. *See* FED. R. CIV. P. 41(b); *Isom v. Indio Mgmt. at the Everly*, No.4:20-CV-947-SDJ-CAN, 2021 WL 5501786, at *2 (E.D. Tex. Oct. 20, 2021) ("The Court recommends the instant suit be dismissed under Rule 41(b) for failure to comply with Court Orders and to diligently prosecute."), *report and recommendation adopted*, No.4:20-CV-947-SDJ, 2021 WL 5493377 (E.D. Tex. Nov. 23, 2021); *Shuemake v. Botie Hillhouse*, No. 6:18CV349, 2021 WL 3044433, at *1 (E.D. Tex. July 2, 2021) (plaintiff's "failure to submit an updated mailing address evinces his failure to prosecute his own case"), *report and recommendation adopted sub nom. Ernest Bob Shuemake v. Botie Hillhouse*, No. 6:18CV349, 2021 WL 3032725 (E.D. Tex. July 19, 2021); *Wildhaber v. United States*, No. 3:19-CV-2045-K (BH), 2020 WL 2544021, at *1 (N.D. Tex. Apr. 20, 2020) ("Because [plaintiff] failed to comply with the orders that he pay the filing fee or file an IFP application with a certificate of inmate trust account, and has not otherwise responded to it, this case should be dismissed for failure to prosecute or follow an order of the court."), *report and recommendation adopted*, No. 3:19-CV-2045-K, 2020 WL 2542735 (N.D. Tex. May 19, 2020); *Jeffery v. Davis*, No. 3:20-CV-164-C (BH), 2020 WL 2363458, at *1 (N.D. Tex. Apr. 20, 020) ("This case should be dismissed without prejudice under Fed. R. Civ. P. 41(b) for failure to prosecute or follow orders of the court[.]"), *report and recommendation adopted*, No. 3:20-CV-164-C-BH, 2020 WL 2343157 (N.D. Tex. May 11, 2020).

### 3.  *The Commissioner's decision should be affirmed.*

The Commissioner frames Plaintiff's issues as follows: 1) whether substantial evidence supports the residual functional capacity ("RFC") assessment; 2) whether Plaintiff satisfied his step four burden of showing that he was unable to perform his past relevant work; and 3) whether the evidence that Plaintiff submitted to the court warrants remand (Dkt. #27 at 1). Conversely,

Plaintiff's pleadings seem to request a *de novo* review of the evidence Plaintiff submitted to the Social Security Administration.[4] *See* (Dkt. #3 at 5) (explaining that Plaintiff is pursuing this case because the Social Security Administration said that Plaintiff's case "was close[d]" and "I know in my heart Mr[.] Joe didn't get a fair trail [sic] considering his long[-]term illness"); (Dkt. #18 at 1) (stating that "every medical document[] was presented by his doctors concerning his medical condition said inability to work [sic]. We were never given reasons by the Judge on why my husband was denied"); (Dkt. #31 at 1) (stating that Plaintiff is pursuing review in this court in hopes that the court "see[s] what Judge ALJ [sic] couldn't see which is righteous judgment"). Because the court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, the court's analysis will follow the Commissioner's statement of the issues. *See, e.g.*, *Harris*, 209 F.3d at 417.

### a.  Substantial evidence supports the ALJ's RFC assessment.

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *Id.* at § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each

---

[4] Plaintiff filed this federal action *pro se*, which imposes an additional layer of consideration for the court. As this and other courts have recognized, a lay plaintiff is unfamiliar with legal terms of art such as "substantial evidence" and lacks expertise in the rules governing Social Security regulations. *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). Moreover, no statute, regulation, or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner. *Elam v. Barnhart*, 386 F. Supp. 2d 746, 752 (E.D. Tex. 2005). Often, *pro se* litigants in Section 405(g) appeals invite the court to re-weigh the evidence and come to a different conclusion than did the Commissioner, which the court may not do. *See Washington*, 413 F. Supp. 2d at 791. Although courts must construe *pro se* pleadings and arguments liberally considering a party's lay status, they must also maintain their role as neutral and unbiased arbiters. *Lockridge v. Colvin*, No. 3:12–cv–4135–BN, 2014 WL 1255745, at *3 (N.D. Tex. March 27, 2014). Courts are not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized. *Id.* (citing *Elam*, 386 F. Supp. 2d at 753).

impairment. *Id.* at § 404.1520a(b)(1); *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001). For most listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. 20 C.F.R. § 404.1520a(b–c). "Paragraph B" contains four broad functional areas representing a persons' mental functioning in a work setting: (1) understand, remember, or apply information; (2) interact with others; (3) concentration, persistence, or pace; and (4) adapt or manage oneself. *Id.* at § 404.1520a(c)(3). The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. *Id.* at § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. *Id.* at § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at step two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. *Id.* at § 404.1520a(d)(l). If the ALJ finds that the mental impairment is severe at step two, then the ALJ must determine at step three if it meets or equals a listed mental disorder of the Listing. *Id.* at § 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. *Id.* at § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. *Id.* at § 404.1520a(d)(3); *Boyd*, 239 F.3d at 705.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most that a claimant is able to do despite his physical and mental limitations, and is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. §§ 416.945, 416.920(a)(4). Relevant herein, the "special technique" is not an RFC assessment. SSR 96–8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

Here, the ALJ's opinion recognizes that Plaintiff suffered from certain mental conditions that warranted limitations, as outlined in the ALJ's evaluation of the "paragraph B" criteria at step three and his recitation of the doctors' opinions and evaluations (TR 13–15). Considering these limitations and the medical evidence, the ALJ then conducted an RFC assessment:

> After careful consideration of the entire record, I find that the claimant has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: In understanding, remembering, and carrying-out instructions, he can perform simple, routine tasks. In dealing with changes in work setting, he can make simple work-related decisions. Also, he can frequently interact with supervisors and co-workers, while he can only occasionally interact with the general public.

(TR 15).

The Record contains substantial evidence to support the ALJ's RFC determination. First, the ALJ's reliance on the objective medical evidence in the record supports the RFC determination. Specifically, the ALJ notes that

> the claimant's mental status examinations were completely normal for the first year after the amended alleged onset date (Ex. 3F/7; 5F/4, 19; 6F/34, 35, 45, 46, 77, 78, 88, 89, 108, 109, 121, 122, 135–37). From September 2020 forward, the mental status examinations showed sad mood, congruent affect, and paranoid thought content with auditory hallucinations to reflect the claimant's reports of these, but there is no indication that the claimant was actively having these episodes during these examinations, and his examinations were otherwise normal (Ex. 6F/158–60,

21

173–75, 196–98, 212, 213). These largely normal mental status examinations are inconsistent with a finding of disabling mental impairments.

(TR 16–17). Still addressing the timeline of Plaintiff's impairment, the ALJ went on to note the

following:

> The claimant reported that he had been diagnosed with schizophrenia since 1982 (Ex. 6F/5), well before the amended alleged onset date. His wife testified that his symptoms had worsened over the years, but the record shows that this worsening was quite brief and before the amended alleged onset date. That is, in May 2019, the claimant endorsed auditory hallucinations, paranoia, poor sleep, depression, being easily frustrated, anxiety, and difficulty concentrating (Ex. 6F/5). By July 2019, the claimant reported that he was doing well with no problem apart from difficulty waking up in the morning at times (Ex. 6F/26).

> At the claimant's first presentation during the relevant period, in September 2019, the claimant still reported that he was doing well with no problem or new issues, and he said that he was sleeping well with tiredness for only about an hour in the morning (Ex. 6F/33). He continued to report for the rest of that year and early 2020 that he was doing well, sleeping well, and had no complaints apart from feeling down in March 2020, but only "at times" (Ex. 6F/44, 74, 85).

> The claimant generally reported the same for the rest of 2020 (Ex. 6F/105, 118, 132, 155, 169, 192). While the claimant began reporting in April 2020 that he had bad dreams, heard a knocking at the door, and/or had paranoid thoughts, he described these as only "sometimes" and that he was still doing well (Ex. 6F/105, 118), and he reported by July 2020 that he could ignore these, and that they did not affect him (Ex. 6F/132, 155, 169, 192). The other exception to his lack of complaint was his report in September 2020 that he was feeling depressed with helplessness, hopelessness, and loss of interest (Ex. 6F/155). This led to the claimant's being prescribed Zoloft; he reported from the following month forward that he was better in this regard (Ex. 6F/169, 192). The claimant endorsed worsening of numerous symptoms in December 2020, including worsening auditory hallucinations and paranoia, but this was the last appointment of record, so there is no follow-up appointment of record to show how the medication adjustment made at that time has affected the claimant (Ex. 6F/207, 208, 214).

> Not only is this general trend of improvement during treatment inconsistent with a finding of disability, but also the claimant achieved this improvement and stability with treatment that has been conservative, both in the frequency and nature of treatment, which is likewise inconsistent with a finding of disability.

(TR 16–17). The ALJ is correct that "[i]f an impairment reasonably can be remedied or controlled

by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*,

864 F.2d 340, 348 (5th Cir. 1988) (citing 20 C.F.R. §§ 404.1530, 416.930; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987)). Further, relying on records from LifePath Systems, the ALJ noted that, "at all times throughout the relevant period, the claimant's treating source diagnosed his impairments as improving (Ex. 6F/35, 36, 46, 47, 75, 86, 105, 106, 118, 119, 133, 156, 171, 172, 194, 195, 209, 210)." (TR 17).

The ALJ also discussed opinion evidence from state agency psychological consultants Dr. Logan and Dr. Posey as well as opinion evidence from Dr. Rahman, Plaintiff's treating source (TR 18). Regarding the state agency psychological consultants, the ALJ ultimately dismisses their opinions as unpersuasive, explaining that

> the State agency psychological consultants opined that the claimant could understand, remember, and carry out detailed but not complex instructions; make decisions; concentrate for extended periods; interact with others; and respond to changes (Ex. 2A/9; 4A/10, 11). These opinions are rather well supported for the reasons discussed above in connection with the paragraph B criteria, but they are somewhat inconsistent with the subjective evidence discussed above – namely, the claimant's difficulty keeping up at work and at home and his difficulty understanding and remembering during the hearing. Also, I note that these consultants' lack of assessed limitations in the claimant's ability to interact with others is inconsistent with their assessment of moderate limitation in the paragraph B criterion of interacting with others.

(TR 18). Likewise, the ALJ was not persuaded by Dr. Rahman's opinion, stating that Dr. Rahman

> opined in January 2021 that the claimant had substantial loss or extreme loss of abilities in most mental work-related activities (Ex. 7F/1, 2). This opinion is somewhat well supported because Dr. Rahman listed the claimant's diagnoses and clinical signs identified as anhedonia, sleep disturbance, paranoia, low energy, chronic disturbance of mood and depression, difficulty thinking/confusion, hallucinations and delusions (Ex. 7F/2). Conversely, the claimant exhibited no relevant signs during mental status examinations or even routinely complain of such symptoms. Instead, as was discussed above, the claimant initially endorsed difficulty sleeping but later reported improvement, he eventually reported depression but later reported improvement, and he endorsed paranoia and auditory hallucinations but told his treating source that he could ignore these, and that they did not affect him.

(TR 18). Notably, the Fifth Circuit has emphasized that it is not the court's intent to require the Commissioner to obtain the RFC finding directly from a medical opinion, thereby nullifying the ALJ's role as factfinder. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) ("[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.") (citation and internal quotation marks omitted). Here, the ALJ considered the medical evidence, including Drs. Logan, Posey, and Rahman's objective medical findings and medical opinions applicable to Plaintiff's period of disability (TR 17–18). *See Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (explaining that consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.") (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (internal quotation marks omitted).

The ALJ's RFC determination also incorporated restrictions that are supported by substantial evidence. With regards to Plaintiff's ability to interact with other people, the ALJ noted that Plaintiff

> can still be expected to interact frequently with supervisors and coworkers based on his reports that he got along great with authority figures, which is consistent with his respectful demeanor during the hearing, and based on his ability to get along with his family and church members, which suggests that he can get along with those with whom he is familiar. The claimant's moderate limitation in adapting or managing oneself supports a finding that he can make only simple work-related decisions, which is consistent with his difficulty keeping up at work and at home balanced with his lack of deficits in grooming, hygiene, judgment, or insight throughout the relevant period. Finally, the claimant's moderate limitation in the other two paragraph B criteria support a finding that the claimant can work with only simple instructions.

(TR 17–18). The ALJ incorporated the limitations found at earlier steps into the RFC after a thorough evaluation of the evidence in this case. The ALJ discussed Plaintiff's Paragraph B limitations at length, recognizing these through incorporation of additional restrictions to the RFC

to account for such (TR 15–18). As such, the ALJ based his RFC determination on substantial evidence such that remand is not warranted.

### b. Substantial evidence supports the ALJ's determination that Plaintiff can perform Plaintiff's past relevant work.

Regarding Plaintiff's past relevant work at step four, the Commissioner argues that Plaintiff did not demonstrate that he could not perform his past relevant work (Dkt. #27 at 9). Plaintiff testified at the Hearing that when he was a dishwasher, he would have to leave work early three or four days a week due to the exhaustion, weakness, and confusion caused by Plaintiff's medication (TR 44). Plaintiff also testified that he hears a knocking sound "daily and nightly" and that he thinks people are talking about him or are out to get him "all the time" (TR 45; 50). Ms. Hunter testified that Plaintiff zoned out consistently and that Plaintiff reported hearing things daily (TR 60–63). Ms. Hunter also testified that Plaintiff has trouble expressing his emotions because he becomes confused, and that these symptoms have gotten worse over time (TR 68). Even so, the claimant has the burden of proof at the first four steps of the process. *Leggett*, 67 F.3d at 564. Moreover, the ALJ may exercise judgment concerning a plaintiff's testimony and is not mandated to wholly accept the allegations as truthful. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Indeed, an individual's statements standing alone cannot be conclusive evidence of disability. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (citation omitted).

Additionally, the VE's testimony supports the ALJ's conclusion that Plaintiff can perform Plaintiff's past relevant work. During the hearing, the VE testified that the claimant's past relevant work is classified as a dishwasher, which requires medium exertion and has a specific vocational preparation ("SVP") rating of 2; and cook helper, which requires medium exertion and has an SVP rating of 2 (TR 70–71). Based on that testimony and two hypotheticals, the ALJ

specifically asked the VE, pursuant to SSR 00-4p, if his vocational testimony was consistent with the information contained in the DOT. His answer was that his testimony was consistent, and I accept this expert testimony, noting that the claimant's past relevant unskilled work is consistent with the claimant's restriction to working with simple instructions. Therefore, in comparing the claimant's RFC with the physical and mental demands of this work, I find that the claimant can perform it as generally performed.

(TR at 19). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citation and internal quotation marks omitted). As such, there is substantial evidence to support the conclusion that Plaintiff can perform his past relevant work.

### c. The court will not remand the Commissioner's decision for review of the May 3, 2023 letter.

On June 6, 2023, Plaintiff filed correspondence with the court and attached a May 3, 2023 letter from mental health professional Nicholas Callaghan (Dkt. #26 at 3). The letter states that Plaintiff's current diagnoses, "per Vanessa Brimigion, APN, are Schizophrenia and Unspecified Anxiety Disorder. He has attended sessions regularly and is in compliance with his treatment plan." (Dkt. #26 at 3). This evidence is outside of the court's review. *See Carrier*, 944 F.2d at 247 ("We are constrained by the record which was available to the ALJ"). However, construing Plaintiff's briefing more broadly, the court will consider Plaintiff's attempt to insert out-of-record evidence as a constructive request to remand for further consideration of the additional evidence. Under sentence six of 42 U.S.C. § 405(g), the court "may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *Taylor ex rel. I.C.T. v. Comm'r,* No. 3:11–CV–1015–K (BF), 2012 WL 2794972, at *6 (N.D. Tex. June 8, 2012). To satisfy the

materiality requirement of § 405(g), new evidence must relate to the time period for which benefits were denied and must not concern a later-acquired disability or subsequent deterioration of a previously non-disabling condition. *Leggett*, 67 F.3d at 567; *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989) (citation omitted); *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987). Here, the May 3, 2023 letter does not "relate to the time period for which benefits were denied," and thus is not material to the court's review of the Commissioner's decision. As such, the court will not remand the Commissioner's decision for consideration of the May 3, 2023 letter.

## VI.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of March, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE